**BURNETT, Plaintiff-Appellee, v. INDUSTRIAL COMMISSION, Defendant-Appellant.**

Ohio Appeals, Second District, Greene County.

No. 487. Decided October 19, 1945.

Paul L. Birt, Dayton, and A. K. Meck, Dayton, for plaintiff-appellee.

Hon. Hugh S. Jenkins, Atty. Genl., C. G. L. Yearick, Asst. Atty. Genl., Wm. T. Burgess, Asst. Atty. Genl., and Albertus B. Conn, Asst. Atty. Genl., Columbus, for defendant-appellant.

MONTGOMERY, J., of the Fifth Appellate District, sitting by designation.

## OPINION

BY THE COURT:

This is an appeal on questions of law from the Court of Common Pleas of Greene County, Ohio. The action was one for personal injuries alleged to have been received by the plaintiff in the course of his employment, and upon trial being had, the jury returned a verdict in favor of the plaintiff. A motion for a new trial was filed and overruled and final judgment rendered.

The record discloses that James I. Burnett, plaintiff-appellee, and two other parties had each been operating their own truck at Patterson Field, but that it was so wet they could not work, so all three went to Mr. Hurst of the Hurst Sand & Gravel Company and hired out to haul dirt from a stripping operation to Old Osborn, for the same rate for which they had been working, to wit, $2.50 per hour. Each was to furnish his own truck, gas and oil and were to be paid weekly. Mr. Hurst was around the job spotting trucks, sometimes under the shovel, for loading purposes.

The plaintiff testified that there were no arrangements as to how many days they were to work, but that he told Mr. Hurst he would stay with him until it was dry and then go back to his former job at Patterson Field. He testified he had operated his own truck for about seven years; that he had worked for

the city of Osborn off and on; that he had done different types of hauling in his career as a trucker and that at one time he hauled trash and miscellaneous hauling of every type. The license on his truck was in his own name, and he paid for all maintenance, upkeep and repairs on it. He stated that he was never asked for a social security number, and that he had worked a total of ten and one-fourth hours at $2.50 per hour before the injury. He also testified that he had received an additional seventy-six cents, which was federal transportation tax.

Mr Charles Hurst, the owner of the Hurst Sand & Gravel Company, testified substantially the same as the plaintiff and the other witnesses. He testified that he told them that he started work at his plant around seven o'clock in the morning; that there were no arrangements made as to how long they would work and they were to haul until their job was ready to start back at Patterson Field.

At the close of the plaintiff's case the defendant moved for a directed verdict, which motion was overruled. Thereupon the defendant rested its case, and again renewed its motion for a directed verdict, which was overruled.

Only one question is presented to this Court for determination, that is, was the plaintiff an employee of the Hurst Sand & Gravel Company at the time he received the injuries of which he complains? It is claimed by the defendant that the plaintiff was not an employee but an independent contractor, the definition of which is found in §1465-61 GC, par. 2.

In examining the charge of the court to the jury, the court said:

"While there are several issues raised by the pleadings, the case has resolved itself into one issue. That issue is whether or not the plaintiff in this case was an employee of the Hurst Sand & Gravel Company or whether he was an independent contractor. The principal test to determine whether or not a person is an independent contractor or an employee is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result an independent contractor relationship is thereby created. Reservation of right by employer to designate certain things does not by itself make such truck owner a servant where such right to control relates to the result and not to the manner or means of accomplishing the result, but the fact that the plaintiff in this case owned his own truck does

not necessarily affect the legal relation between the parties and does not of itself make him an independent contractor, but it is one of the things the jury may consider to determine the relations between the parties, and in order to make a person an independent contractor he must be bound to produce a given result."

This instruction was clear and concise and in accord with the principles announced in **The Fisher Body Company v. Wade, 45 Oh App. 263,** and also in the recent case of **Gillum v. Industrial Commission, 141 Oh St 273.** The contract of employment not being definite as to the control to be retained by the employer over the employee, the jury had to solve this question by inference from all the surrounding facts and circumstances. The plaintiff was not paid by the load and had no definite contract to haul a definite number of loads. His employer could discharge him whenever he desired and would have discharged him if he had not traveled by a reasonable route at a reasonable rate of speed to the dumping place. If he had been traveling by a much further route to the dumping place than necessary, Hurst certainly could have ordered him to take a shorter route. Burnett was working for Hurst and Hurst would make a profit or loss depending upon the manner in which the plaintiff performed his work.

It is our conclusion that the verdict of the jury was in accordance with the evidence and that there is no prejudicial error in the record.

The judgment is affirmed.

HORNBECK, P. J., MILLER, J., and MONTGOMERY, J., concur.